## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## ALBANY DIVISION

| | | |
|---|---|---|
| **CHANDLER LARKIN and COLLEEN SULLIVAN, as Co-Administrators of the Estate of SAVILLE SULLIVAN, and CHANDLER LARKIN as the wrongful death beneficiary of SAVILLE SULLIVAN, deceased,** | ) ) ) ) ) ) | |
| | ) | **Case No.:**_____ |
| **Plaintiffs,** | ) ) | |
| **v.** | ) ) | *Jury Trial Demanded* |
| **MERCK SHARP & DOHME, LLC and MERCK & CO., INC.,** | ) ) ) | |
| **Defendants.** | ) ) | |

## COMPLAINT FOR DAMAGES

Plaintiffs, Chandler Larkin and Colleen Sullivan, as the co-administrators of the Estate of Saville Sullivan, deceased; and Chandler Larkin, as the surviving wrongful death beneficiary of Saville Sullivan, deceased, hereby file this Complaint for Damages, alleging as follows:

## NATURE OF THE CASE

The Defendants (collectively "Merck") operated a pharmaceutical manufacturing plant in Albany, Georgia, known as the Flint River Plant. There, Merck used and released within the Flint River Plant and the surrounding environment a toxic soup of chemicals and substances known to be dangerous and carcinogenic to humans, especially pregnant women and their unborn children. In utero exposure to these chemicals and substances can cause birth defects in children, and worse, have been linked to pediatric cancer. Merck exposed employees at the Flint River Plant to dangerously elevated levels of these chemicals as part of its manufacturing and disposal process.

From 1993 until 2005, Colleen Sullivan was employed by Merck at the Flint River Plant. While employed there, she became pregnant and gave birth to two beautiful daughters, Saville (born 1997) and Lilia (born 1999). Leading up to and during both pregnancies, Colleen was continuously exposed to dangerous levels of the above-referenced chemicals and substances at the Flint River Plant.

In 2016, the unthinkable happened. Lilia, Colleen's younger daughter, was diagnosed with a rare form of pediatric brain cancer. Shockingly, three weeks later, Saville was also diagnosed with pediatric brain cancer. After a courageous but horrific battle, which included remission and then a return of the vicious cancer, Saville tragically passed away on October 10, 2023.



Merck knew, or should have known, of the dangers of exposing employees to these dangerous chemicals and substances yet did nothing to limit (much less prevent) Colleen's exposure to these killer chemicals and substances. Merck's actions, or lack thereof, caused Saville's horrific brain cancer, and ultimately, her untimely and tragic death.

2

## PARTIES, JURISDICTION, AND VENUE

1.      Saville Sullivan was an adult citizen and resident of the State of Georgia at the time of her tragic death on October 10, 2023. At the time of her death, she was the lawful wife of Chandler Larkin.

2.      Plaintiff Chandler Larkin is an adult citizen and resident of the State of Georgia, and is the surviving spouse of Saville Sullivan, deceased. As such, Chandler Larkin is a wrongful death beneficiary of Saville Sullivan and is authorized pursuant to Georgia law to bring this civil action against the Defendants.

3.      Plaintiff Colleen Sullivan is an adult citizen and resident of the State of Georgia, and is the surviving biological mother of Saville Sullivan, deceased.

4.      On October 1, 2025, the Probate Court of Dougherty County, Georgia issued "Letters Administration" appointing Chandler Larkin and Colleen Sullivan as Co-Administrators of the Estate of Saville Sullivan, Deceased. A copy of the "Letters of Administration" issued by the Probate Court of Dougherty County, Georgia is attached hereto as Exhibit "A."

5.      Pursuant to Georgia law, Chandler Larkin and Colleen Sullivan are entitled to maintain this action on behalf of the Estate of Saville Sullivan, Deceased.

6.      Defendant Merck Sharp & Dohme, LLC is a foreign limited liability company with its principal place of business in Rahway, New Jersey. This Defendant may be served through its registered agent for service of process at 289 S. Culver Street, Lawrenceville, Georgia 30046.

7.      Upon information and belief, the sole member of Merck Sharp & Dohme, LLC is Merck & Co., Inc.

3

8.     Defendant Merck & Co., Inc. is a foreign for-profit corporation with a principal place of business in Rahway, New Jersey. This Defendant may be served through its registered agent for service of process at 820 Bear Tavern Road, City of West Trenton, New Jersey 08628.

9.     Upon information and belief, Merck & Co., Inc. is the legal name used for Merck's operations in the United States and Canada.

10.     The Defendants shall be collectively referred to hereafter as "Merck."

11.     During all times material to this Complaint, Merck was registered to do business in the State of Georgia and was actually doing business in the State of Georgia, including owning and operating a chemical manufacturing facility in Albany, Georgia known as the "Flint River Facility." Merck's Flint River Facility was located at 3517 Radium Springs Road, Albany, Georgia 31705.

12.     This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. section 1332 because the matter in controversy exceeds the sum of $75,000.00, exclusive of interest and costs, and is a dispute between citizens of different states.

13.     This Court has personal jurisdiction over these Defendants because Merck regularly and routinely transacts business in Georgia, is registered to do business in Georgia, and committed tortious acts and omissions within the State of Georgia.

14.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) (2) as a substantial part of the events or omissions giving rise to this Complaint occurred in this judicial district and division, specifically at the Flint River Plant in Albany, Georgia.

## STATEMENT OF THE FACTS

### A. Merck's Flint River Plant

15.     Merck is a global pharmaceutical company with manufacturing facilities located across the world.

16.     From 1952 until 2007, Merck owned and operated a manufacturing facility in Albany, Georgia, known as the Flint River Plant.



17.     At the Flint River Plant, Merck manufactured pharmaceutical products, including active pharmaceutical ingredients or bulk human health products.

18.     These products were stored on site and then shipped to other facilities for further processing and packaging.

19.     Among the drugs Merck manufactured in Albany were Zocor and Prilosec.

20.     Production at the Flint River Plant included a chemical synthesis manufacturing process using chemical reactions. Production was carried out in two stages, known as "wet" and "dry." Liquid raw materials were pumped into the plant from storage tanks located outside.

21.    The raw materials were reacted in a series of stainless steel and glass-lined vessels inside the facility. The typical production cycle included numerous separate chemical reactions, separations, distillations, and filtrations.

22.    As a part of Merck's manufacturing process at the plant, many chemicals and byproducts were released to the environment, the air, the surrounding soils, and water sources.

23.    Part of the output or waste from these chemical processes included toxic and carcinogenic gases and fumes, some of which Merck failed to capture and instead released inside the Flint River Plant and/or into the surrounding environment.

**B. Numerous Chemicals of Concern**

24.    The Flint River Plant utilized, produced, emitted, and/or used in its manufacturing process numerous hazardous chemicals and substances that carried carcinogenic and/or harmful risks, including but not limited to toluene, benzene, aniline, methanol, formaldehyde, cyanide, ethyl acetate, and dichloromethane/methylene chloride.

25.    In utero exposure to toluene has been scientifically linked to various birth defects in children.

26.    Benzene is a known carcinogen, and in utero exposure to the substance constitutes a significant health risk to children, including the risk of causing and/or increasing the risk of birth defects and pediatric cancer in children.

27.    Aniline is considered to be a probable human carcinogen that can cross the placental barrier, and in utero exposure can lead to birth defects as well as increase the risk of developing cancer later in life.

28.    Methanol exposure in utero poses a serious health hazard and may result in various adverse health effects.

29.    Formaldehyde is a known carcinogen, meaning exposure to the chemical could lead to serious health consequences, including cancer.

30.    Cyanide is a highly toxic chemical that can cross the placental barrier and cause long term health problems for children exposed in utero.

31.    Ethyl acetate is an organic solvent that can be toxic to humans, including children in utero.

32.    Methylene chloride, also known as dichloromethane (DCM), is a likely human carcinogen that can cross the blood-brain barrier and placental barrier during pregnancy, and further carries the risk of pediatric cancer and subsequent cancer from in utero exposure. The Environmental Protection Agency ("EPA") recently banned the chemical from most commercial and consumer use due to its unreasonable risk of harm to humans, including to developing fetuses.

33.    At all times material to this Complaint, Merck used one or more of the above referenced chemicals at the Flint River Plant in the production of its pharmaceutical products and/or released and/or emitted the chemicals inside the Flint River Plant and/or throughout the surrounding environment of the plant (air, water, soils, and/or groundwater).

34.    Moreover, Merck continuously released these chemicals over the plant's operational lifetime. These releases occurred through air exposure from routine operations, routine handling and transfer operations, equipment cleaning and maintenance, spills or leaks, waste disposal, and/or by other means.

35.    At all times material to this Complaint, Merck was aware that all these chemicals and substances were "chemicals of concern" and posed a serious risk to humans (and unborn children) exposed to them.

### C.  Merck Closes the Flint River Plant

36.     In December 2005, Merck announced the closure of the Flint River Plant as part of a global restructuring program, although its drug Vioxx had been pulled from the market in 2004.

37.     After closing the Flint River Plant, Merck attempted to sell the plant.

38.     After Merck was unable to sell the site for four years, Merck announced its plans to demolish the plant and restore the property to what is known as a "greenfield site."

39.     During the time of this announcement, in or around March 2011, the EPA and Georgia's Environmental Protection Division of the Department of Natural Resources ("Georgia EPD") released statements to the local newspaper relating to the Flint River Plant.[1]

40.     These two agencies reported that Merck released toluene and DCM, amongst other chemicals, in levels sufficient to negatively affect the soils and groundwater surrounding the site.

### D.  The Sullivan Family – Colleen, Saville, and Lilia

41.     Colleen Sullivan began working for Merck at the Flint River Plant on September 27, 1993, and was continuously employed by Merck until February 2, 2005, when Merck began shutting down the plant.[2]

42.     Over the course of her career, Colleen was employed in various roles, including as HR Specialist, Assistant HR Manager, HR Manager, and HR Business Partner, and through her various roles, she would frequently visit areas throughout the Plant.

43.     Moreover, over the course of her employment with Merck leading up to and through the birth of both her daughters, and due to Merck's actions and/or omissions, Colleen was exposed

---

[1] https://albanyherald.com/news/officials-after-merck-demolished-environmental-issues-will-remain/ (last accessed on September 19, 2025).

[2] Merck retained Colleen as a contractor to oversee the plant's closure through 2007.

to elevated, dangerous, toxic levels of chemicals and substances, including those outlined above, as Merck released these chemicals into the air and/or the environment of the Plant on a continuous, persistent, and unabated basis.

44.    At no point did Merck warn Colleen about the presence of elevated levels of dangerous and/or toxic chemicals at the Plant, nor did it warn Colleen of the dangers these substances posed, including as to pregnant women and their unborn children.

45.    Similarly, Merck never required Colleen to wear any type of personal protection equipment to shield her from dangerous chemical exposure at the Flint River Plant.

46.    During Colleen's employment with Merck, she became pregnant with her first child, Saville Sullivan, and gave birth to her baby girl on January 12, 1997.

47.    Colleen worked full time for Merck during her pregnancy with Saville.

48.    Several years later, while still employed by Merck, Colleen became pregnant for the second and last time. On September 22, 1999, Colleen gave birth to another healthy baby girl, Lillian "Lilia" Sullivan.

49.    Unbeknownst to the Sullivans, and as a direct result of Colleen's workplace exposure to dangerous chemicals and substances at the Plant (and therefore, Saville's and Lilia's exposure while developing in utero), Saville and Lilia were born with an increased risk for developing pediatric cancer.

50.    Indeed, while working for Merck at the Flint River Plant through at least giving birth to Lilia in 1999, Colleen was constantly exposed to dangerously high levels of the above referenced chemicals and substances that placed her unborn children at risk.

51.     From the time both girls were born until 2016, both Saville and Lilia had medically unremarkable childhoods. Both were healthy, thriving young women that did not appear to have serious health conditions.



(Pictured are Lilia (L) and Saville).

52.     All of that changed in August 2016.

**E.  Saville and Lilia are diagnosed with separate pediatric brain cancers**

53.     On or about August 10, 2016, Lilia suffered a seizure. A CT scan revealed a mass in her brain, and that mass would later be diagnosed as stage 3 brain cancer.

54.     Lilia would undergo traumatic surgery to remove her tumor, and then a painful cancer recovery process.

55.     Three weeks later, tragedy struck again – this time with Lilia's sister, Saville. While Lilia was undergoing intense radiation and chemotherapy, Saville, a sophomore at the University of Alabama, visited her doctor complaining of severe headaches. A scan revealed a mass in her brain, and further testing confirmed she had stage 4 brain cancer.

56.     For the next year, Saville would undergo a traumatic and painful battle with her cancer, where she suffered hearing loss, was constantly sick, weak, developed sores, loss of all of her hair (including her eyebrows and eyelashes), developed a speech impediment, suffered from serious balance issues and conditions that caused her to fall, and experienced painful neuropathy which required physical therapy so Saville could learn to walk again – all either as a result of her cancer, or as a consequence of the devastating, but hopefully lifesaving, therapies designed to combat the cancer.

57.     Initially, Saville's treatment (as painful as it was) appeared to be working. Saville went into remission, returned to the University of Alabama to finish her degree and graduate with honors (changing her degree from speech therapy to Child Life Science as a direct result of her experiences with the great child life specialists that helped her in the hospital), and met the love of her life Chandler shortly thereafter.

58.     On November 12, 2022, Saville and Chandler married, and they started their lives together in Tallahassee, Florida, where Saville worked as a certified Child Life Specialist at the Tallahassee Memorial Hospital.

59.     While Saville was always positive and courageous in her battle, she was personally tormented by the potential that her cancer would return. In January 2023, after experiencing double vision, she went in for a scan and received the news she prayed she would never hear – her brain cancer had returned.

60.     Saville started another grueling round of painful therapy to combat her cancer. Chandler and Saville were forced to sell their house, leave the life they started in Tallahassee, and move back to Albany with Saville's family to continue her fight.

61.    In August 2023, Saville received devastating news. Her cancer had metastasized throughout her body, and she was effectively out of options.

62.    Saville returned home, hoping that her condition would improve, but it didn't. Her condition deteriorated until she was eventually transferred to a hospice house.

63.    On October 10, 2023, Saville tragically lost her battle with cancer, Chandler lost his beautiful wife, and her family lost a loving daughter and sister.

64.    Saville and Lilia had no hereditary risks or genetic predispositions to their brain cancers.

65.    But for Saville's in utero exposure to dangerously elevated levels of the above outlined chemicals from Merck's Flint River Plant, she would not have developed the brain cancer which ultimately robbed her of her life.

**F.  Merck's Acts and/or Omissions Caused These Brutal Cancers**

66.    At all material times to this Complaint, neither Colleen, Saville, Lilia, nor Chandler had the requisite experience and/or a background in toxic exposure related to brain cancer, or the chemical components existing at the Merck plant, such that they knew or could have known about the potential causal nature between chemicals and substances existing at the Flint River Plant and Saville and Lilia's subsequent cancers.

67.    However, at all times relevant to this Complaint, Merck knew or should have known that it was exposing employees to one or more extremely hazardous and/or dangerous and/or carcinogenic chemicals capable of causing severe injury or death to humans and/or their in utero children.

68.    At all times relevant to this Complaint, Merck knew or should have known that employees, especially pregnant employees like Colleen, should not have been exposed to one or

more extremely hazardous and/or dangerous and/or carcinogenic chemicals as referenced in the Complaint at these levels.

69.    At all times relevant to this Complaint, Merck knew or should have known of the dangers of exposing employees, especially pregnant employees and their unborn children, to one or more extremely hazardous and/or dangerous and/or carcinogenic chemicals as referenced in the Complaint.

70.    Because of Merck's conduct, whether through its actions and/or inactions, Merck created, permitted, caused, and/or further created a dangerous work environment whereby pregnant employees and their unborn children were exposed to dangerous levels of one or more extremely hazardous and/or dangerous and/or carcinogenic chemicals as referenced in the Complaint that can cause pediatric brain cancer.

71.    Merck knew or should have known that failure to take proper and reasonable measures to mitigate workplace exposure to one or more extremely hazardous and/or dangerous and/or carcinogenic chemicals as referenced in the Complaint would damage and injure employees and their unborn children.

72.    Had Merck taken reasonable measures to provide a safe work environment, Saville Sullivan would be alive today.

73.    Merck, through its acts and/or omissions, caused Saville Sullivan's brain cancer, pain and suffering, economic loss, and ultimately, her untimely death.

74.    As a proximate and direct result of Merck's actions and/or inactions, Saville Sullivan suffered traumatic pre-death pain and suffering, including two horrific battles with cancer, severe fright, shock, pain, mental trauma, terror, and economic loss; and ultimately, the tragic loss of her life on October 10, 2023.

75.     As a proximate and direct result of Merck's actions and/or inactions, Chandler, the loving husband and wrongful death beneficiary of Saville Sullivan, lost the love of his life.

## COUNT ONE

### (Negligence)

76.     Plaintiffs hereby re-allege and incorporate paragraphs 1-75 (the Statement of Facts) as if set out here in full.

77.     At all times material to this Complaint, Merck either independently or jointly owned, occupied, controlled, managed, operated, and had supervisory and workplace and environmental safety responsibility for the Flint River Plant.

78.     From 1993 through 2005, Merck employed Colleen.

79.     Merck owed a duty to its employees, including Colleen, to provide a safe workplace.

80.     Merck's duty to provide a safe workplace extended to its pregnant employees and their developing children, such as Saville.

81.     Merck had a duty to exercise reasonable care at the Flint River Plant which included:

   a.   Provide a safe workplace for employees and their unborn children;

   b.   Implement a workplace safety program to limit employees, such as Colleen, and her unborn children, from exposure to one or more extremely hazardous and/or dangerous and/or carcinogenic chemicals;

   c.   Provide adequate ventilation, monitoring, and personal protective equipment;

   d.   Operate and maintain the Flint River Plant in a reasonably safe condition;

e.  Warn employees of the dangers of exposure to one or more extremely hazardous and/or dangerous and/or carcinogenic chemicals used at the Flint River Plant;

f.  Warn pregnant employees of the dangers of exposure to one or more extremely hazardous and/or dangerous and/or carcinogenic chemicals, particularly to their unborn children;

g.  Limit and/or implement measures that would protect pregnant employees from exposure to elevated levels of one or more extremely hazardous and/or dangerous and/or carcinogenic chemicals used at the Flint River Plant;

h.  Implement and adhere to industry standards and best practices limiting employee exposure to one or more extremely hazardous and/or dangerous and/or carcinogenic chemicals used at the Flint River Plant;

i.  Take reasonable measures to prevent employees, such as Colleen (and her unborn children), from exposure to elevated levels of one or more extremely hazardous and/or dangerous and/or carcinogenic chemicals used at the Flint River Plant;

j.  Create measures, standards, or guidelines reasonably sufficient to prevent employees from exposure to elevated levels of one or more extremely hazardous and/or dangerous and/or carcinogenic chemicals used at the Flint River Plant;

k.  Provide adequate safety measures sufficient to prevent employees, such as Colleen (and her unborn children), from exposure to elevated levels of one or more extremely hazardous and/or dangerous and/or carcinogenic chemicals used at the Flint River Plant;

15

l.   Conduct reasonable testing to detect and quantify levels of one or more extremely hazardous and/or dangerous and/or carcinogenic chemicals in the Flint River Plant;

m.   Warn employees, such as Colleen, of the dangerous conditions of known or reasonable knowable elevated levels of one or more extremely hazardous and/or dangerous and/or carcinogenic chemicals;

n.   Prevent employees, including Colleen (and her unborn children), from exposure to elevated levels of one or more extremely hazardous and/or dangerous and/or carcinogenic chemicals used at the Flint River Plant;

o.   Take all necessary measures to be knowledgeable of the risks associated with all products used in Merck's manufacturing process, and any byproducts of that manufacturing process, including the risks of exposing employees and their unborn children to these chemicals via inhalation or other exposure pathways;

p.   Create and implement necessary practices and procedures governing the safety of the Flint River Plant at all locations, specifically regarding workplace safety and environmental releases of any chemical, including one or more extremely hazardous and/or dangerous and/or carcinogenic chemicals;

q.   Correct known defective conditions or dangerous processes in the manufacturing process, specifically regarding environmental releases of chemicals, including one or more extremely hazardous and/or dangerous and/or carcinogenic chemicals used at the Flint River Plant;

    r.   Utilize industry customs and standards as it pertains to workplace safety and environmental releases of chemicals including one or more extremely hazardous and/or dangerous and/or carcinogenic chemicals;

    s.   Follow Merck's own internal policies and procedures for ensuring a safe environment in the workplace; and

    t.   Exercise reasonable care to protect its employees, including Colleen, and its pregnant employees and their unborn children, from reasonably foreseeable harm caused by exposure to elevated levels of one or more extremely hazardous and/or dangerous and/or carcinogenic chemicals existing at the Plant.

82.    Merck breached these duties owed to Colleen, and Saville, as discussed above and was therefore negligent.

83.    Merck failed to provide a safe workplace for Colleen, and exposed her unborn children to extremely hazardous and/or dangerous and/or carcinogenic chemicals.

84.    Merck knew or should have known that one or more extremely hazardous and/or dangerous and/or carcinogenic chemicals it used at the Flint River Plant posed serious health hazards (including pediatric cancer) for children exposed in utero, including industrially-exposed pregnant women, such as Colleen.

85.    It was foreseeable to Merck that employees' children exposed to elevated levels of one or more extremely hazardous and/or dangerous and/or carcinogenic chemicals in utero could result in serious injury or death, including from pediatric cancer.

86.    Merck knew or should have known that its failure to adhere to its duties as discussed herein would expose employees, including Colleen (and her unborn children), to safety risks,

17

including the threat of harm directly related to and arising from employee exposure to one or more extremely hazardous and/or dangerous and/or carcinogenic chemicals.

87.     Merck was negligent, thereby exposing employees to safety risks in the form of exposure to elevated levels of chemicals, including one or more extremely hazardous and/or dangerous and/or carcinogenic chemicals.

88.     Had Merck taken reasonable action as referenced herein, Colleen would not have been exposed to dangerous levels of one or more extremely hazardous and/or dangerous and/or carcinogenic chemicals, and Saville would be alive today.

89.     As a proximate and direct result of Merck's actions and/or inactions, as discussed above, Saville Sullivan suffered severe fright, shock, and terror; catastrophic injuries; traumatic pain and suffering; horrific brain cancer; and ultimately, the tragic loss of her life on October 10, 2023.

90.     Merck knew or should have known that failure to provide a safe workplace for pregnant employees; failure to maintain adequate ventilation; failure to maintain the Plant; failure to provide appropriate personal protective equipment for employees; failure to monitor air quality; failure to warn pregnant employees of the dangers of exposure to one or more extremely hazardous and/or dangerous and/or carcinogenic chemicals; and failure to transfer pregnant employees to areas minimizing exposure to one or more extremely hazardous and/or dangerous and/or carcinogenic chemicals would lead to foreseeable, serious risk of injury and/or death from such exposure.

91.     Plaintiffs Chandler Larkin and Colleen Sullivan, as the Co-Administrators of the Estate of Saville Sullivan, deceased; and Chandler Larkin as the wrongful death beneficiary, are entitled to recover for the injuries and damages suffered by Saville Sullivan, as well as the full

value of Saville Sullivan's life, and thus seek all available remedies and damages pursuant to Georgia law.

92.     The injuries suffered in this case were reasonably foreseeable which Merck had cause to anticipate in that Merck had actual or constructive knowledge of the dangerous conditions; the dangers of exposing pregnant employees and their unborn children to elevated levels of one or more extremely hazardous and/or dangerous and/or carcinogenic chemicals; the unsafe levels of one or more extremely hazardous and/or dangerous and/or carcinogenic chemicals emitted to the air and environment inside various areas of the Flint River Plant where Colleen worked during the normal course of her job responsibilities; superior knowledge of the dangers of industrial exposure to one or more extremely hazardous and/or dangerous and/or carcinogenic chemicals in pregnant employees and their unborn children; and the knowledge of an unsafe work environment for pregnant employees and their unborn children and the potential development harms for those children, including increased risk for developing pediatric cancer.

## COUNT TWO

### (Premises Liability)

93.     Plaintiffs hereby re-allege and incorporate paragraphs 1-75 (the Statement of Facts) as if set out here in full.

94.     At all times material to this Complaint, Merck either independently or jointly owned, occupied, controlled, managed, operated, and had supervisory and workplace safety responsibility for the Flint River Plant.

95.     From 1993 through 2005, Merck employed Colleen.

96.     At all times material to this Complaint, Colleen was lawfully present at the subject premises, the Flint River Plant, such that she was a lawful invitee of the premises.

97.    Merck owed a duty to Colleen, as well as her unborn children, to provide a safe workplace, which included:

     a.  Provide a safe workplace for employees and their unborn children;

     b.  Implement a workplace safety program to limit employees, such as Colleen, and her unborn children, from exposure to one or more extremely hazardous and/or dangerous and/or carcinogenic chemicals;

     c.  Provide adequate ventilation, monitoring, and personal protective equipment;

     d.  Operate and maintain the Flint River Plant in a reasonably safe condition;

     e.  Warn employees of the dangers of exposure to one or more extremely hazardous and/or dangerous and/or carcinogenic chemicals used at the Flint River Plant;

     f.  Warn pregnant employees of the dangers of exposure to one or more extremely hazardous and/or dangerous and/or carcinogenic chemicals, particularly to their unborn children;

     g.  Limit and/or implement measures that would protect pregnant employees from exposure to elevated levels of one or more extremely hazardous and/or dangerous and/or carcinogenic chemicals used at the Flint River Plant;

     h.  Implement and adhere to industry standards and best practices limiting employee exposure to one or more extremely hazardous and/or dangerous and/or carcinogenic chemicals used at the Flint River Plant;

     i.  Take reasonable measures to prevent employees, such as Colleen (and her unborn children), from exposure to elevated levels of one or more extremely hazardous and/or dangerous and/or carcinogenic chemicals used at the Flint River Plant;

j.  Create measures, standards, or guidelines reasonably sufficient to prevent employees from exposure to elevated levels of one or more extremely hazardous and/or dangerous and/or carcinogenic chemicals used at the Flint River Plant;

k.  Provide adequate safety measures sufficient to prevent employees, such as Colleen (and her unborn children), from exposure to elevated levels of one or more extremely hazardous and/or dangerous and/or carcinogenic chemicals used at the Flint River Plant;

l.  Conduct reasonable testing to detect and quantify levels of one or more extremely hazardous and/or dangerous and/or carcinogenic chemicals in the Flint River Plant;

m.  Warn employees, such as Colleen, of the dangerous conditions of known or reasonable knowable elevated levels of one or more extremely hazardous and/or dangerous and/or carcinogenic chemicals;

n.  Prevent employees, including Colleen (and her unborn children), from exposure to elevated levels of one or more extremely hazardous and/or dangerous and/or carcinogenic chemicals used at the Flint River Plant;

o.  Take all necessary measures to be knowledgeable of the risks associated with all products used in Merck's manufacturing process, and any byproducts of that manufacturing process, including the risks of exposing employees and their unborn children to these chemicals via inhalation or other exposure pathways;

p.  Create and implement necessary practices and procedures governing the safety of the Flint River Plant at all locations, specifically regarding workplace safety

21

and environmental releases of any chemical, including one or more extremely hazardous and/or dangerous and/or carcinogenic chemicals;

q.  Correct known defective conditions or dangerous processes in the manufacturing process, specifically regarding environmental releases of chemicals, including one or more extremely hazardous and/or dangerous and/or carcinogenic chemicals used at the Flint River Plant;

r.  Utilize industry customs and standards as it pertains to workplace safety and environmental releases of chemicals including one or more extremely hazardous and/or dangerous and/or carcinogenic chemicals;

s.  Follow Merck's own internal policies and procedures for ensuring a safe environment in the workplace;

t.  Exercise reasonable care to protect its employees, including Colleen, and its pregnant employees and their unborn children, from reasonably foreseeable harm caused by exposure to elevated levels of one or more extremely hazardous and/or dangerous and/or carcinogenic chemicals existing at the Plant;

u.  Be knowledgeable of, remove, prevent, and/or fix any and all defective and/or dangerous conditions with the Flint River Plant capable of, leading to, causing, and/or facilitating exposure to elevated levels of one or more extremely hazardous and/or dangerous and/or carcinogenic chemicals; and

v.  Maintain the plant, its processes, its infrastructure, its workforce, and its systems to remove, prevent and/or fix any and all defective and/or dangerous conditions from existing at the Plant, including those capable of, leading to,

causing, and/or facilitating exposure to elevated levels of one or more extremely hazardous and/or dangerous and/or carcinogenic chemicals.

98.     Merck breached these duties, whether through their actions and/or inactions, and they are therefore liable under Georgia premises liability law for causing one or more dangerous conditions to exist at the Plant, including but not limited to those conditions capable of, leading to, causing, and/or facilitating exposure of workers and their unborn children to elevated levels of one or more extremely hazardous and/or dangerous and/or carcinogenic chemicals.

99.     As a proximate and direct result of Merck's actions and/or inactions, as discussed above, Saville Sullivan suffered severe fright, shock, and terror; catastrophic injuries; traumatic pain and suffering; horrific brain cancer; and ultimately, the tragic loss of her life on October 10, 2023.

100.     Merck knew or should have known that failure to provide a safe workplace for pregnant employees; failure to maintain adequate ventilation; failure to properly maintain the Plant, failure to provide appropriate personal protective equipment for employees; failure to monitor air quality; failure to warn pregnant employees of the dangers of exposure to one or more extremely hazardous and/or dangerous and/or carcinogenic chemicals; and failure to transfer pregnant employees to areas minimizing exposure to one or more extremely hazardous and/or dangerous and/or carcinogenic chemicals would lead to foreseeable, serious risk of injury and/or death from such exposure.

101.     The injuries suffered in this case were reasonably foreseeable which Merck had cause to anticipate in that Merck had actual or constructive knowledge of the dangerous conditions; the dangers of exposing pregnant employees and their unborn children to elevated levels of one or more extremely hazardous and/or dangerous and/or carcinogenic chemicals; the unsafe levels of

one or more extremely hazardous and/or dangerous and/or carcinogenic chemicals emitted to the air and environment inside various areas of the Flint River Plant where Colleen worked during the normal course of her job responsibilities; superior knowledge of the dangers of industrial exposure to one or more extremely hazardous and/or dangerous and/or carcinogenic chemicals in pregnant employees and their unborn children; and the knowledge of an unsafe work environment for pregnant employees and their unborn children and the potential development harms for those children, including increased risk for developing pediatric cancer.

102.    Plaintiffs Chandler Larkin and Colleen Sullivan, as the Co-Administrators of the Estate of Saville Sullivan, deceased; and Chandler Larkin as the wrongful death beneficiary, are entitled to recover for the injuries and damages suffered by Saville Sullivan, as well as the full value of Saville Sullivan's life, and thus seek all available remedies and damages pursuant to Georgia law.

## **COUNT THREE**

### **(Gross Negligence/Wantonness)**

103.    Plaintiffs hereby re-allege and incorporate paragraphs 1-75 (the Statement of Facts) as if set out here in full.

104.    Merck knew or should have known that it was exposing employees (and their unborn children) to dangerous levels of one or more extremely hazardous and/or dangerous and/or carcinogenic chemicals at the Flint River Plant, especially pregnant employees.

105.    Merck knew or should have known that it failed to provide a safe workplace for employees (and their unborn children) at the Flint River Plant.

106.    Merck knew or should have known that it was releasing into the environment, including the air inside and immediately adjacent to the Flint River Plant, dangerous levels of one or more extremely hazardous and/or dangerous and/or carcinogenic chemicals.

107.    Merck knew or should have known that these elevated levels of one or more extremely hazardous and/or dangerous and/or carcinogenic chemicals posed an unreasonable health risk to employees, especially pregnant employees and their unborn children.

108.    Merck knew or should have known that exposing pregnant employees and their unborn children to elevated levels of one or more extremely hazardous and/or dangerous and/or carcinogenic chemicals at the Flint River Plant could endanger the unborn child to development issues and/or increased risk of subsequent development of pediatric cancer.

109.    Merck knew or should have known that failure to provide a safe workplace for pregnant employees; failure to maintain adequate ventilation; failure to provide appropriate personal protective equipment for employees; failure to monitor air quality; failure to warn pregnant employees of the dangers of exposure to one or more extremely hazardous and/or dangerous and/or carcinogenic chemicals; and failure to transfer pregnant employees to areas minimizing exposure to one or more extremely hazardous and/or dangerous and/or carcinogenic chemicals would lead to foreseeable, serious risk of injury and/or death from such exposure.

110.    Merck knew or should have known that its failure to meet its duties as outlined in this Complaint would lead to foreseeable, catastrophic harm to pregnant employees and their unborn children, like Saville.

111.    Merck, in failing to keep the Flint River Plant in a reasonably safe condition as referenced herein, acted with willful misconduct, malice, wantonness, oppression, and/or conscious indifference to the consequences such that it was grossly negligent.

112.    As a proximate and direct result of Merck's actions and/or inactions, as discussed above, Saville suffered severe fright, shock, and terror; catastrophic injuries; traumatic pain and suffering; horrific brain cancer; and ultimately, the tragic loss of her life on October 10, 2023.

113.    Plaintiffs Chandler Larkin and Colleen Sullivan, as the Co-Administrators of the Estate of Saville Sullivan, deceased; and Chandler Larkin as the wrongful death beneficiary, are entitled to recover for the injuries and damages suffered by Saville Sullivan, as well as the full value of Saville Sullivan's life, and thus seek all available remedies and damages pursuant to Georgia law.

## COUNT FOUR

### (Pertaining to Claims for the Wrongful Death of Saville Sullivan)

114.    Plaintiffs hereby re-allege and incorporate paragraphs 1-75 (the Statement of Facts) as if set out here in full.

115.    As a direct and proximate result of Merck's wrongful conduct as discussed in this Complaint, Saville Sullivan suffered horrific pain and suffering, and ultimately, the loss of her life.

116.    At the time of her death, Saville was only twenty-six (26) years old, meaning she had a remaining life expectancy of over fifty-five (55) years.

117.    Plaintiff Chandler Larkin is entitled to bring this lawsuit for the wrongful death of his wife, Saville, and seeks to recover the full value of her life and all other applicable damages pursuant to Georgia law for Saville's wrongful death.

## COUNT FIVE

### (Pertaining to Claims of the Estate of Saville Sullivan)

118.    Plaintiffs hereby re-allege and incorporate paragraphs 1-75 (the Statement of Facts) as if set out here in full.

119.    As a result of Merck's negligence, gross negligence, and/or wanton conduct, Saville suffered pre-death fright; shock; catastrophic and excruciatingly injuries; significant medical and out of pocket expenses; and extreme pre-death emotional and mental pain and suffering as associated with her brain cancer and the brutal but necessary treatments related thereto.

120.    As the Co-Administrators of the Estate of Saville Sullivan, Chandler Larkin and Colleen Sullivan are entitled to bring this suit on behalf of the Estate of Saville Sullivan pursuant to Georgia law. Plaintiffs Chandler Larkin and Colleen Sullivan, as Co-Administrators of the Estate of Saville Sullivan, are entitled to recover for the conscious pain and suffering of Saville prior to her untimely death, as well as all medical, funeral, burial, and other related expenses incurred as a direct and proximate result of Merck's wrongful conduct as outlined in this Complaint.

## COUNT SIX

### (Loss of Consortium)

121.    Plaintiffs hereby re-allege and incorporate paragraphs 1-75 (the Statement of Facts) as if set out here in full.

122.    Saville and Chandler were legally married as husband and wife from November 12, 2022, until her passing on October 10, 2023.

123.    As a direct and proximate result of Merck's wrongful conduct as discussed in this Complaint, Chandler was deprived of the companionship, fellowship, cooperation, assistance, affection, services, comfort, support, society, guidance, and consortium of his spouse, Saville.

124.    Chandler is entitled to an award of general damages for loss of consortium proximately resulting from Defendants' actions and/or omissions as alleged above, and any and all additional relief as Georgia law would permit under these circumstances.

## COUNT SEVEN

### (Punitive Damages)

125.    Plaintiffs hereby re-allege and incorporate paragraphs 1-75 (the Statement of Facts) as if set out here in full.

126.    By failing to perform its duties as listed above, specifically in failing to provide a safe workplace and exposing Saville to in utero exposure to one or more extremely hazardous and/or dangerous and/or carcinogenic chemicals, Merck's actions and/or inactions amounted to willful misconduct, malice, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to the consequences. *See* O.C.G.A. § 51-12-5.1.

127.    Accordingly, Plaintiffs are entitled to recover punitive damages in an amount expressed in monetary terms sufficient to penalize, punish, and deter Merck from engaging in similar conduct in the future.

\*\*\*\*\*\*

**WHEREFORE**, the Plaintiffs pray for the following relief in this civil action:

1)    The summons and process be issued requiring these Defendants appear as provided by law to answer the allegations of this Complaint;

2)    That judgment be rendered against Defendants in favor of Plaintiffs for all compensatory damages afforded by the State of Georgia as a result of the Defendants' wrongful conduct, including but not limited to:

a.    Physical pain, suffering, and mental anguish of Saville Sullivan, deceased, prior to her death;

b. Special damages incurred by the Estate of Saville Sullivan, such as medical, funeral, burial, caregiver, lost earnings and wages, and other out of pocket expenses;

c. The full value of the life of Saville Sullivan without deduction for necessary or personal expenses had she lived; and

d. The amount of all such compensatory damages that are proven at trial and determined by a trial by jury.

3) That the Plaintiffs be awarded all punitive damages as determined by a trial by jury;

4) For a jury trial on all issues so triable;

5) That the Plaintiffs recover the costs associated with bringing this civil action, including for litigation costs, expenses, time, and attorneys' fees;

6) That the Plaintiffs recover all damages to which they would be entitled to under Georgia law; and

7) That Plaintiffs have all such relief as this Court deems just and proper.

**<u>TRIAL BY JURY IS HEREBY DEMANDED</u>**

[Rest of page intentionally left blank]

Respectfully submitted this 7th day of October, 2025.

**BEASLEY, ALLEN, CROW, METHVIN, PORTIS & MILES, P.C.**

*/s/ J. Parker Miller*
J. PARKER MILLER
Georgia Bar No. 135183
Attorney for Plaintiffs

OF COUNSEL
J. Parker Miller
Overlook II
2839 Paces Ferry Road SE, Suite 400
Atlanta, GA 30339
800-898-2034 (Office)
855-674-1818 (Fax)
Parker.Miller@beasleyallen.com

*/s/ Matthew R. Griffith (Pro Hac Vice Pending)*
MATTHEW R. GRIFFITH
Alabama Bar No. 6564T83G
Attorney for Plaintiffs

*/s/ William R. Sutton*
WILLIAM R. SUTTON
Georgia Bar No. 196778
Attorney for Plaintiffs

OF COUNSEL
Matthew R. Griffith
William R. Sutton
P.O. Box 4160
Montgomery, AL 36103
334-269-2343 (Office)
334-954-7555 (Fax)
Matt.Griffith@beasleyallen.com
William.Sutton@beasleyallen.com

**MALONE LAW OFFICE**

*/s/ Adam Malone*
ADAM MALONE
Georgia Bar No. 468005
Attorney for Plaintiffs

OF COUNSEL
Adam Malone
Two Ravinia Drive, Suite 300
Atlanta, GA 30346
770-390-7550 (Office)
770-390-7560 (Fax)
adam@malonelaw.com